**GREEN EVANS-SCHROEDER, PLLC**
Matthew H. Green (AZ Bar No. 020827)
Jesse Evans-Schroeder (AZ Bar No. 027434)
130 West Cushing Street
Tel.: (520) 639-7288
Fax: (520) 882-8843
Email: matt@arizonaimmigration.net

*Attorneys for Plaintiff*
Student Doe #2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TUCSON DIVISION

| | |
|---|---|
| Arizona Student DOE #2, <br><br> Plaintiff, <br><br> v. <br><br> Donald J. TRUMP, in his official capacity, President of the United States of America; <br><br> John CANTU, in his official capacity as ICE Enforcement and Removal Operations Phoenix Field Office Director; <br><br> Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; and <br><br> Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security; <br><br> Defendants. | Case No. 4:25-cv-00175-AMM <br><br> **PLAINTIFF'S SUPPLEMENT TO MOTION TO PROCEED UNDER PSEUDONYM AND MOTION FOR PROTECTIVE ORDER/ORDER NOT TO DETAIN** <br><br> <u>Request for Declaratory and Injunctive Relief</u> |

Plaintiff's Supplement to Motion to Proceed
Under Pseudonym and Motion for Protective Order

## I. INTRODUCTION

Plaintiff is one of over a thousand international students who have had their Student and Exchange Visitor Information Systems (SEVIS) records abruptly terminated in recent weeks.[1] Plaintiff brings this motion to ensure that they can proceed to prosecute this action—and other students can likewise feel safe bringing similar actions—free from retaliation, harassment, blacklisting, and other harm.

U.S. Immigration and Customs Enforcement's (ICE's) policy of unlawful terminations appears to be designed to coerce students into abandoning their studies or post-graduate training and "self-deport." As part of that policy, ICE has engaged in highly publicized arrests of students who presented no flight risk or danger, whisking them away from their campuses to faraway detention centers without warning based on their exercise of First Amendment rights. The terminations have also taken place against the backdrop of numerous threats issued to universities to cut off billions of dollars of federal funding and retribution against others who have dared to criticize or go against the administration.

The government has not elected to detain Plaintiff. However, the government's recent actions have understandably put Plaintiff on edge and rendered Plaintiff afraid of disclosing their identity. Plaintiff reasonably fears that Defendants will detain them in retaliation for filing this lawsuit. Given the high profile and political nature of the

---

[1] *See International Student Visas Revoked*, INSIDE HIGHER ED, https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked (last accessed Apr. 14, 2025).

Plaintiff's Supplement to Motion to Proceed
Under Pseudonym and Motion for Protective Order                                    1

administration's visa revocations and actions against noncitizen students, Plaintiff also reasonably fears harassment and blacklisting by third parties were the public to learn of Plaintiff's identity.

This is an extraordinary moment in U.S. history, one that warrants a commensurate response from the courts. Nevertheless, the relief Plaintiff is seeking through this motion is relatively modest and well within the scope of measures that the Court has authority to take to protect litigants and manage proceedings. Specifically, Plaintiff requests leave to proceed with the pseudonym Arizona Student Doe #2 in this action and an order that any Party filing materials with information identifying Plaintiff redact or file such materials under seal. Additionally, Plaintiff requests an order preventing Defendants from using information disclosed to them about Plaintiff for any purpose outside of this action and an order specifically prohibiting Defendants from detaining Plaintiff.

These actions are necessary for Plaintiff to be able to swiftly move forward with the case and they appropriately balance the need for anonymity and the interests of Defendants and the public. Accordingly, Plaintiff respectfully requests that the Court enter the proposed order lodged concurrently with this Motion.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff incorporates by reference the facts and background information set forth in his Motion to Proceed Under Pseudonym, filed with this Court on April 14, 2025. Doc. 3. Plaintiff also incorporates by reference the facts and background information set forth in the other filings before this Court, specifically Plaintiff's Complaint for Declaratory and Injunctive Relief (Doc. 1), and Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and the attached exhibits thereto, both of which were also filed on April 14, 2025. Docs. 2, 2-1, 2-2, 2-3, 2-4, 2-5.

On April 15, 2025, the Hon. James Soto granted Plaintiff's motion for a temporary restraining order (TRO). Although Judge Soto ordered Defendants to respond to Plaintiff's TRO motion by April 21, 2025, and Plaintiffs to file a reply by April 24, 2025, the TRO did not address Plaintiff's motion to proceed under a pseudonym.

On April 17, 2025, the Government emailed undersigned counsel, requesting that Plaintiff provide the U.S. Attorney's Office with Plaintiff's full name, date of birth, country of citizenship, and SEVIS ID Number.

On April 18, 2025, Plaintiff, through undersigned counsel, offered to comply with the Government's request so long as the Government agreed to enter into a stipulation for a protective order that essentially mimics the language of the April 17, 2025, interim order issued by Judge Zipps in a nearly identical case, *Arizona Student Doe #1 v. Donald Trump, et al.*, 4:25-cv-1-00174-JGZ, which states that "counsel shall provide the Government with the identifying information necessary for the Government to make investigation into the allegations in this case determining Plaintiff's specific circumstances. This information shall not be disclosed outside the context of the investigation or to any individuals or parties not involved in conducting the investigation, and may be used only to the extent needed to conduct such investigation." *See Student Doe #1*, Doc. 12 (text entry only).

Unfortunately, the Government responded that the U.S. Attorney's Office lacks authority to stipulate to a protective order, but invited Plaintiff to move the court for one, which Plaintiff now files along with a supplement to their Motion to Proceed Under Pseudonym. Doc. 3.

### III.   ARGUMENT

**A.   Legal Standard**

Although Rule 10(a) of the Federal Rules of Civil Procedure generally requires that a complaint include the name of all parties, it is well-established that federal courts have discretion to permit parties to proceed under pseudonyms "when special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (collecting cases). Parties to litigation may proceed using a

Plaintiff's Supplement to Motion to Proceed
Under Pseudonym and Motion for Protective Order                                                    4

pseudonym with leave of the court. *See, e.g., U.S. v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) ("Where it is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment, courts have permitted the use of pseudonyms."); *Balance Studio, Inc. v. Cybernet Entm't*, LLC, 204 F. Supp. 3d 1098, 1100–01 (N.D. Cal. 2016); *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 294 n.1 (2000) (noting that the district court permitted plaintiffs "to litigate anonymously to protect them from intimidation or harassment").

In this Circuit, courts analyze a request to proceed under a pseudonym or anonymously by analyzing whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1068. Relevant factors include "(1) the severity of the threatened harm . . . (2) the reasonableness of the anonymous party's fears . . . and (3) the anonymous party's vulnerability to such retaliation." *Id. Advanced Textile* also recognizes that where anonymity is warranted, a court may also issue protective orders to govern the terms of disclosure and use of information about a party's identity pursuant to its inherent powers to manage court proceedings and Federal Rule of Civil Procedure 26(c). 214 F.3d at 1069.

**B. Anonymity and a Protective Order/Order Not to Detain Are Necessary to Preserve Plaintiff's Right of Access to the Court**

*1. The Current Climate*

Plaintiff's Supplement to Motion to Proceed
Under Pseudonym and Motion for Protective Order                                     5

One of the hallmarks of this administration—just three months into the second Trump presidency—has been a willingness to exact revenge on the government's foes and perceived foes.[2] Whether it is former government officials, law firms, educational institutions, or others, the administration has not hesitated to use its vast power to compel allegiance or make life difficult for those who are seen as disloyal.

With respect to noncitizen students, the hammer has come down particularly hard. For example, on March 5, 2025, the government informed a graduate student and Fulbright recipient at Columbia University who had participated in protests last year, Ranjani Srinivasan, that her student visa had been revoked.[3] They began searching for her, eventually raiding her apartment. Fearing for her safety, she left the United States. Secretary of Homeland Security Kristi Noem then posted on X, "I'm glad to see one of the Columbia University terrorist sympathizers use the CBP Home app to self deport."[4] On March 21, 2025, Momodou Taal, a student at Cornell University who had filed a lawsuit challenging the administration's crackdown, was asked to surrender to immigration authorities.[5] He eventually self-deported. On March 25, 2025, six

---

[2] *See* Michael S. Schmidt, *In Trump's Second Term, Retribution Comes in Many Forms*, N.Y. TIMES (Apr. 7, 2025), https://www.nytimes.com/2025/04/07/us/politics/trump-biden-law-firms-revenge.html.

[3] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. TIMES (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristi-noem-video.html.

[4] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), https://x.com/Sec_Noem/status/1900562928849326488.

[5] Benjamin Leynse and Avery Wang, *A Pro-Palestinian Activist Lost His Case, but the "Fight From Below" Continues*, THE NATION (Apr. 7, 2025),

plainclothes federal officers ambushed Rümeysa Öztürk, a graduate student at Tufts University, outside her home, apparently for co-authoring an op-ed.[6] At the time, she was not aware that her visa had been revoked. Additional arrests in recent weeks have taken place in New York, Washington D.C., Alabama, Minnesota, and Arizona.[7] Secretary of State Marco Rubio called the international students "lunatics."[8] A number of the students have been quickly moved across state lines to detention facilities in Louisiana or Texas.[9]

---

https://www.thenation.com/article/activism/momodou-taal-palestine-cornell-university-trump-lawsuit/.

[6] Dalia Faheid & Gloria Pazmino, *A PhD Student Was Snatched by Masked Officers in Broad Daylight*, CNN (Mar. 29, 2025), https://www.cnn.com/2025/03/29/us/rumeysa-ozturk-tufts-university-arrest-saturday/index.html.

[7] Eliza Shapiro, *Immigration Authorities Arrest Pro-Palestinian Activist at Columbia*, N.Y. TIMES (Mar. 9, 2025), https://www.nytimes.com/2025/03/09/nyregion/ice-arrests-palestinian-activist-columbia-protests.html (arrest of Mahmoud Khalil); Jaclyn Diaz, *What We Know About the Case of Detained Georgetown Professor Badar Khan Suri*, NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-s1-5336173/immigration-georgetown-university-professor (arrest of postdoctoral fellow Badar Khan Suri); Eduardo Medina and Anemona Hartocollis, ICE Agents Detain University of Alabama Doctoral Student, N.Y. TIMES (Mar. 26, 2025), https://www.nytimes.com/2025/03/26/us/ice-detains-doctoral-student-university-alabama.html (arrest of doctoral student at U of Alabama); *University of Minnesota Student Who Was Detained by ICE Sues for Immediate Release*, ASSOC. PRESS (Apr. 2, 2025), https://www.cnn.com/2025/04/02/us/university-of-minnesota-graduate-student-detained-ice-lawsuit/index.html (arrest of Doğukan Günaydın); Helen Rummel, *International ASU Student Detained After Visa Revoked*, ARIZ. TIMES (Apr. 4, 2025), https://www.azcentral.com/story/news/local/arizona-education/2025/04/04/arizona-state-university-student-detained-after-visa-revocation/82793138007/ (arrest of student at ASU).

[8] Madeline Halpert, *Marco Rubio Says US Revoked At Least 300 Foreign Students' Visas*, BBC (Mar. 27, 2025), https://www.bbc.com/news/articles/c75720q9d7lo.

[9] Jaclyn Diaz & Adrian Florido, *Why Is Trump Sending Immigrant University Students to Louisiana and Texas?*, NPR (Apr. 8, 2025), https://www.npr.org/2025/04/08/nx-s1-5351645/ice-detention-louisiana-university-scholars.

Plaintiff's Supplement to Motion to Proceed
Under Pseudonym and Motion for Protective Order                                                 7

The government's targeting of students has expanded far beyond just those who have been vocal about Palestine.[10] In the vast majority of cases, immigration officials have not provided reasons for the visa revocations and terminations.[11] The actions by ICE have been accompanied, or have sometimes been preceded, by harassment or doxxing of students by right-wing groups.[12]

2. *Plaintiff Has a Right of Access to the Courts Which Would be Undermined by Retaliation and Harassment*

Plaintiff has an inalienable right to "petition the government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has recognized this right "as one of the most precious of the liberties safeguarded by the Bill of Rights[.]" *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002) (internal citation omitted). The Court has repeatedly held that the right of access to the courts can implicate "the protections of the Petition Clause." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).

Retaliation against lawful petitioning would undermine the integrity of the right and itself run afoul of the Petition Clause. *Borough of Duryea*, 564 U.S. at 387 (holding

---

[10] Kate Selig and Halina Bennet, *The Trump Administration Revoked 800 Student Visas. Here Is What We Know*, N.Y. TIMES (Apr. 11, 2025), https://www.nytimes.com/2025/03/27/us/students-trump-ice-detention.html.

[11] While minor criminal history or police contact is suspected, that still is not a basis for termination of a student's SEVIS record or status. (*See* Complaint, Dkt. 1, ¶¶ 15-20.)

[12] Stephanie Saul, *A Mysterious Group Says Its Mission Is to Expose Antisemetic Students*, N.Y. TIMES (Apr. 1, 2025), https://www.nytimes.com/2025/04/01/us/israel-gaza-student-protests-canary-mission.html; Tesfaye Negussie and Nadine El-Bawab, *Doxxing Campaign Against Pro-Palestinian College Students Ramps Up*, ABC NEWS (Oct. 20, 2023), https://abcnews.go.com/International/doxxing-campaign-pro-palestinian-college-students-ramps/story?id=104141630.

that retaliation by government employee can violate the Petition clause); *see also Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009) ("[W]hen a person petitions the government for redress, the First Amendment prohibits any sanction on that action . . . so long as the petition was in good faith."); *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995) (holding that the government cannot transfer a prisoner from one correctional institution to another in order to punish the prisoner for exercising his First Amendment right to pursue litigation). Here, protective measures are necessary to preserve the right of access to the courts. *Cf. Advanced Textile*, 214 F.3d at 1073 (recognizing that fear of employer reprisals "will frequently chill employees' willingness to challenge employers' violations of their rights").

       3. *Plaintiff's Reasonable Fear of Harassment and Other Harms by Third Parties Supports Anonymity*

As noted above, due to the controversial political nature of student visa revocations, Plaintiff reasonably fears possible harassment and blacklisting by third parties if they were to be identified as a student whose SEVIS was terminated and sued the government. Such threatened harm would be severe, and Plaintiff's fears are reasonable. This is enough to demonstrate a need for anonymity. *See Advanced Textile*, 214 F.3d at 1068. Moreover, "where the plaintiff attacks governmental activity," the case for proceeding anonymously is particularly strong. *See, e.g.*, *E.W. v. N.Y. Blood. Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). This is because, in such circumstances, the plaintiff "presumably represents a minority interest (and may be subject to stigmatization)[.]" *Id.*

In connection with permitting Plaintiff to proceed anonymously in the action, the Court has the power to require that any Party filing materials containing information about Plaintiff's identity redact or file such information under seal. Fed. R. Civ. P. 5.2(e). Such an order would be common sense here.

> 4. *Plaintiff's Reasonable Fear of Retaliation by the Government Supports Entry of a Protective Order and Order Prohibiting the Detention*

Plaintiff recognizes the need to eventually provide the government with information about their identity to permit the government to litigate the case, however, due to the very real risk of retaliation by the government, Plaintiff is unable to do so without any protection. Accordingly, Plaintiff asks that the Court enter an order governing the use of any information Plaintiff discloses and an order enjoining Defendants from detaining Plaintiff while the lawsuit is pending. *See Advanced Textile*, 214 F.3d at 1069 ("In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings . . . and to issue protective orders limiting disclosure of the party's name . . . to preserve the party's anonymity to the greatest extent possible . . . .").

Plaintiff's request that the Court enter a protective order limiting the sharing by Defendants' counsel of any information about Plaintiff's identity or related personal information and restricting its use for any purpose outside of this action is reasonable and routine. Courts have also imposed similar terms in protective orders governing information about plaintiffs' identity or litigation materials. *See, e.g.*, *ACLU of Nevada v. Masto*, No. 08-cv-00822-JCM-PAL, 2008 WL 3874263, at *6 (Aug. 18, 2008)

(permitting Doe plaintiffs to proceed under pseudonym, requiring counsel for plaintiffs to disclose the identities of plaintiffs to defendants' counsel, and entering a temporary protective order precluding defendants from disclosing the identities or using the information for any purpose outside the litigation); *Enters. Int'l, Inc. v. Pasaban*, S.A., No. 3:11-CV-05919-RBL, 2012 WL 5269375, at *2 (W.D. Wash. Oct. 24, 2012) (granting protective order restricting disclosure and use of information); *Alvarez v. The Hyatt Regency Long Beach*, No. CV 09-04791-GAF VBKX, 2010 WL 9505289, at *3 (C.D. Cal. Sept. 21, 2010) (granting motion to compel with conditions restricting disclosure and use of information); *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, No. CV092059CASAGRX, 2009 WL 10698442, at *4 (C.D. Cal. Dec. 10, 2009) (similar with respect to motion to compel deposition testimony).

Plaintiff's request for an order prohibiting detention during the pendency of this action, or until further of the Court, is likewise reasonable under the circumstances. Plaintiff has never experienced detention before and the prospect of detention as a response to Plaintiff's participation in this suit is deeply frightening. A detention following the filing of this suit would not only chill Plaintiff's willingness to go forward (in addition to dramatically impacting Plaintiff's practical ability to proceed in this case), but undoubtedly dissuade numerous other international students from vindicating their rights too. Indeed, a federal court recently enjoined the detention of a student at Columbia after federal authorities made clear their intention to apprehend her on the basis of her political speech. *See* Temporary Restraining Order, *Chung v. Trump*, No. 25-cv-2412 (S.D.N.Y. Mar. 25, 2025)).

**C. Plaintiff's Requested Relief Will Not Prejudice Defendants and Is in the Public Interest**

Granting Plaintiff's requested relief will not prejudice Defendants. First, Plaintiff's counsel intends to provide Defendants' counsel with information about Plaintiff's identity as soon as a protective order/order not to detain can be entered. Second, the case will ultimately have little to do with the details of Plaintiff's individual situation. The lawsuit challenges the legality of Defendants' new policy of SEVIS terminations based on visa revocations and/or minor criminal history or police contact with respect to a large (and growing) group of international students around the country. There are only very specific grounds on which ICE can terminate a SEVIS record. (Complaint, Doc. 1, ¶¶ 19-29.) All that the Court will need to determine is whether Plaintiff falls into the class of international students impacted by Defendants' new policy or whether, on the other hand, any of the specific authorized grounds to terminate apply. That depends on a discrete set of facts, few if any of which are likely to be disputed. Plaintiff does not challenge revocation of their visa in this action. (*Id.*, ¶ 9.)

Further, detention of Plaintiff would serve no legitimate purpose. It has been approximately two weeks since Plaintiff's SEVIS record was terminated and, absent any information that it is Plaintiff who has filed this lawsuit, the government has made no indication that it independently wants to take Plaintiff into custody. Indeed, the government would have no reason to take Plaintiff into custody. Plaintiff is a college student who poses no flight risk or danger. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring

Plaintiff's Supplement to Motion to Proceed
Under Pseudonym and Motion for Protective Order                                                    12

noncitizen's appearance during removal proceedings and (2) preventing danger to the community).

Finally, given the circumstances here, anonymity and protection from retaliation *serves* rather than detracts from the public interest. While the public has an interest in access to court proceedings, the individual identity of Plaintiff is not necessary to facilitate the public's understanding of judicial decision-making or "public scrutiny of the important issues in this case." *Advanced Textile*, 214 F.3d 1072. Moreover, the "public . . . has an interest in seeing this case decided on the merits." *Id.* at 1073; *see also N.Y. Blood. Ctr.*, 213 F.R.D. at 111 (where plaintiff challenges a governmental policy or statute "there is arguably a public interest in a vindication of his rights"). Advancing that public interest includes meaningful protection from retaliation. *See Rivera v. NIBCO Corp.*, 364 F.3d 1057, 1064, 1066 (9th Cir. 2004) (granting protective order in recognition of the "harsh[] reality" that defendants had incentive to subject plaintiffs to enforcement action notwithstanding "promise[s] not to [retaliate]" and that unrestricted discovery would "unacceptably burden[] the public interest").

## IV.    CONCLUSION

For the reasons stated above, Plaintiff requests that the Court enter the proposed form of order.

Dated: April 20, 2025

Respectfully submitted,

s/ Matthew Green
Matthew Green
Jesse Evans-Schroeder
Attorneys for Plaintiff